## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**JAMES V PALMER**,

Debtor.

Case No.  **10-60099-7**

## MEMORANDUM of DECISION

At Butte in said District this 10th day of March, 2011.

In this Chapter 7 bankruptcy, after due notice a hearing was held February 10, 2011, in Missoula on the Trustee's Motion for Turnover filed December 16, 2010, wherein the Trustee seeks turnover of the bankruptcy estate's share of Debtor's 2009 income tax refunds.  The Chapter 7 Trustee, Darcy M. Crum of Great Falls, Montana, appeared at the hearing with her counsel, John P. Paul of Great Falls, Montana.  Debtor James V. Palmer also appeared at the hearing with his counsel, James A. Patten of Billings, Montana.  The Trustee and Debtor testified and the Trustee's Exhibit 1 and Debtor's Exhibits A, B and C were admitted into evidence.  At the conclusion of the hearing, the Court granted the parties until February 18, 2011, to file simultaneous post-hearing briefs.  The Trustee and Debtor timely filed their respective briefs. For the reasons discussed below, the Court will leave the record open and grant the parties twenty-one days to provide the Court will two calculations as discussed below.

FACTS

1

The facts are straightforward and are not in dispute.  Debtor is married, but his spouse is not a debtor before this Court.  Debtor and his non-debtor spouse file joint income tax returns.  In 2009, the Palmers were entitled to a federal refund of $13,449 and a refund of $3,741 from the State of Montana.  The Palmers applied their 2009 overpayments to their 2010 estimated taxes, but Debtor indicates that the Palmers are now amending their 2009 tax returns to have the overpayments paid as a refund so the appropriate amount can be turned over to the Trustee.  *See* Debtor's brief filed February 18, 2011, fn.1.

The Trustee's Exhibit 1 is a copy of the Palmers' 2009 Montana Individual Income Tax Return.  Exhibit 1 shows that Debtor's Montana adjusted gross income in 2009 was $281,030, which amount includes wages and salaries of $255,981, while his spouse's Montana adjusted gross income was $40,643.  The Palmers' 2009 state tax return calculates that Debtor's 2009 Montana tax liability was $16,433 while his spouse's was $1,314.  The payments and refundable credits section of the Palmers' 2009 state tax return reflects that Debtor's total payments were $19,488 while his spouse's were $2,000, resulting in a tax overpayment of $3,055 for Debtor and $686 for his spouse.  Debtor's and his spouse's respective overpayments of $3,055 and $686 total $3,741, which represents the amount of the Palmers' 2009 Montana tax overpayment or refund.

Exhibit 1 shows that Schedule III, Montana Itemized Deductions, lines 7a, 7b and 7c allow taxpayers to report their federal income tax payments.  The Palmers' Schedule III to Exhibit 1 is completed as follows:

|  | Debtor | Spouse |
|---|---|---|
| 7a.  Federal income tax withheld in 2009 | 42,913 | 3,394 |
| 7b.  Federal estimated tax payments paid in 2009 | 28,575 | 4,132 |
| 7c.  2008 federal income taxes paid in 2009 | 21,500 | 21,500 |

2

Debtor's Exhibit B is a copy of the Palmers' 2009 1040 U.S. Individual Income Tax Return. Exhibit B shows the Palmers' adjusted gross income for 2009 was $321,673. The Palmers' total federal tax liability in 2009 was $74,565. However, the Palmers paid $46,307 through withholding and $41,707 through estimated tax payments, for total payments of $88,014, resulting in an overpayment of $13,449.

Debtor's Exhibit C reflects that Debtor and his spouse made a 2009 estimated tax payment of 9,000 on the 9th day of an illegible month in 2010. The $9,000 payment was paid with check number 2847, and was written on a check bearing the name of Sharon Palmer. The Court cannot tell whether the check has cleared any bank. It is equally unclear whether the account from which the check was written is held solely in Debtor's spouse's name or whether Debtor's name may also be on the bank account, even though Debtor's name does not appear on the check itself.

## CONTENTIONS of the PARTIES

The Trustee and Debtor agree that the bankruptcy estate is entitled to a share of Debtor's 2009 tax refunds. The Trustee and Debtor, however, disagree on how to determine the bankruptcy estate's share of the Palmers' 2009 income tax refunds. The Trustee argues that it is reasonable, fair and equitable to calculate the bankruptcy estate's share of the income tax refunds based upon the respective incomes of Debtor and his spouse. More specifically, the Trustee asserts that Debtor's adjusted gross income in 2009 of $281,030 was .874% of the Palmers' total adjusted gross income of $321,673. Based upon such calculation, the Trustee maintains that the bankruptcy estate's share of the Palmers' 2009 income tax refund is determined by multiplying .874 by the Palmers' income tax overpayments of $17,190.

3

Debtor argues that income, in and of itself, has little or no bearing on the amount of a tax refund and requests that this Court reject the Trustee's proposed allocation. Debtor instead proposes an allocation of 50% to Debtor and 50% to his spouse. Debtor argues that his and his spouse's interest in the tax refunds are held as tenants-in-common and that tenants-in-common presumptively own an undivided equal interest in their property. In the alternative, Debtor argues that his spouse should get credit for the $9,000 separate estimated tax payment that she made in 2009.

## APPLICABLE LAW

Section 541(a) of the Bankruptcy Code defines "[p]roperty of the estate" to include "all the following property, wherever located and by whomever held:"

> (1) . . . all legal or equitable interests of the debtor in property as of the commencement of the case. (emphasis added).

Generally, courts must examine state law to determine property interests because:

> [S]tate law determines the extent of [a party's] interests [in property] and when these interests expire. *In re Contractors Equip. Supply Co.*, 861 F.2d 241, 244 (9th Cir. 1988); *In re Farmers Markets, Inc.*, 792 F.2d 1400, 1402 (9th Cir. 1986). "State law, however, must be applied in a manner consistent with federal bankruptcy law." *In re Sierra Steel, Inc.*, 96 B.R. 271, 273 (9th Cir. BAP 1989) (*citing In re North Am. Coin & Currency, Ltd.*, 767 F.2d 1573, 1575 (9th Cir. 1985), *amended,* 774 F.2d 1390 (9th Cir. 1985), *cert. denied sub nom. Daniel A. Torres, M.D., P.C. v. Eastlick*, 475 U.S. 1083 (1986)).

> 14 Mont. B.R. at 141-42.

> Furthermore, "The bankruptcy estate succeeds to no more interest than the Debtor possessed or had, and the estate takes its interest subject to such conditions." *In re Kleffner*, 14 Mont. B.R. 10, 15 (Bankr. Mont. 1994) (quoting *In re Baquet*, 61 B.R. 495, 497-98 (Bankr. Mont. 1986)).

*In re Weatherwax*, 16 Mont. BR 304, 308-09 (Bankr. D. Mont. 1997). *See also Nobelman v.*

4

*American Savings Bank*, 508 U.S. 324, 329 (1993) ("In the absence of a controlling federal rule, we generally assume that Congress has 'left the determination of property rights in the assets of a bankrupt's estate to state law,' since such '[p]roperty interests are created and defined by state law.' *Butner v. United States*, 440 U.S. 48, 54-55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). *See also Barnhill v. Johnson*, 503 U.S. 393, 398, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992)."). As recently recognized in *In re Crowson*, 431 B.R. 484, 489 (10th Cir. BAP 2010), "[o]nce that state law determination is made . . . [courts] must [then] look to federal bankruptcy law to resolve the extent to which that interest is property of the estate." Debtor correctly argues in his post-hearing brief that a trustee must prove by a preponderance of the evidence that the property sought in a turnover motion is indeed property of the bankruptcy estate and that the property is in the debtor's possession. *Id.*

## DISCUSSION

Proper allocation of the Palmers' Montana income tax refund is quite simple because the allocation was already done according to Montana law and is reflected on the Palmers' 2009 Montana Individual Income Tax Return. Specifically, Debtor is entitled to $3,055 of the Montana refund while the balance of $686 is payable to Debtor's spouse.

Until recently, courts that have sought to allocate federal tax refunds between debtors and their non-debtor spouses have taken one of three approaches. The first approach allocates refunds between spouses in proportion to their tax withholdings during the relevant year. *See In re Lyall*, 191 B.R. 78 (E.D. Va.1996); *In re McFarland*, 170 B.R. 613, 620 (Bankr. S.D.Ohio 1994); *In re Honomichl*, 82 B.R. 92, 94 (Bankr. S.D.Iowa 1987); *In re Alden*, 73 B.R. 215, 216 (Bankr. N.D.Fla.1986); *In re Ballou*, 12 B.R. 611, 612 (Bankr. D.Kan.1981). Consistent with

what the Trustee proposes in this case, other courts allocate joint refunds in proportion to the income that each spouse generated in the relevant year. *See In re Levine*, 50 B.R. 587 (Bankr.S.D.Fla.1985); *In re Verill*, 17 B.R. 652 (Bankr. D.Md.1982); *In re Kestner*, 9 B.R. 334, 336 (Bankr.E.D.Va.1981); *In re Colbert*, 5 B.R. 646, 648-49 (Bankr.S.D.Ohio 1980). Finally, like what Debtor proposes, other courts have held that joint tax refunds should be allocated equally between husband and wife without regard to tax withholdings or income produced. *In re Trickett*, 391 B.R. 657 (Bankr. D. Mass. 2008); *In re Innis*, 331 B.R. 784, 786 (Bankr. C.D.Ill. 2005); *In re Barrow*, 306 B.R. 28 (Bankr. W.D.N.Y. 2004); *Bass v. Hall*, 79 B.R. 653, 656 (W.D.Va.1987).

While the foregoing approaches are straight-forward in their application, all three approaches have suffered criticism. For instance, Debtor argues that the Trustee's proposed distribution, which would allocate refunds in accordance with income produced, is misplaced because "income, in and of itself, has little or no bearing on the amount of the refund." Similar to Debtor's foregoing argument, the court in *In re Barrow*, 306 B.R. 28, 30-31 (Bankr. W.D.N.Y. 2004), rejected both the income and the withholding approaches reasoning:

> The reality of the Internal Revenue Code is that the total tax is not necessarily linked to income, while the overpayment is not necessarily linked exclusively to income or withholdings. For many taxpayers, a significant portion of the refund is attributable not to these factors, but to any of a number of credits, such as the child tax credit or credits for education or for child and dependent care expenses. In many ways, the tax consequences of a joint filing exhibit no proportionality to respective levels of withholding and income. Joint tax filers may claim an exemption for each spouse, thereby effectively allowing them to use that exemption to offset income of the spouse with higher earnings. Similarly, the losses or deductions of one spouse may favorably impact their joint taxable income. For many married couples, a joint filing permits use of a more favorable tax table. The results are most dramatically illustrated when one spouse earns the entire family income. In that instance, because a spouse without income has

6

joined in signing the tax return, the family may pay significantly less tax, as compared to the tax that would have accrued to a married person filing separately but with identical income and withholdings.  It is simply inaccurate to say that the greater refund is attributable only to the income and withholdings of the employed spouse.

The Trustee, on the other hand, argues convincingly why tax refunds should not be divided in half, and that is that a 50/50 division of a tax refund will more often than not result in a windfall to one party or the other.  *See e.g., In re Kleinfeldt*, 287 B.R. 291, 294-95 (10th Cir. BAP 2002) (rejecting the non-debtor spouse's "argument that she [wa]s entitled to half the tax refund simply because there would have been no tax refund if she had not jointly filed with her husband").  In addition to the cases that have criticized a 50/50 allocation of tax refunds, the Ninth Circuit Court of Appeals in *U.S. v. Elam*, 112 F.3d 1036, 1038 (9th Cir. 1997), held that "[a] joint return does not itself create equal property interests for each party in a refund. Spouses who file a joint return have separate interests in any overpayment, the interest of each depending upon his or her relative contribution to the overpaid tax."  The court in *Elam* also explained that:

> The district court should not have relied on *Hathaway v. United States*, 93-1 U.S.T.C. ¶ 50,285, 1993 WL 207532 (W.D.Wash.1993), to establish that each spouse is entitled to fifty percent credit for the overpayment claimed on a previous joint tax return.  The *Hathaway* court explicitly recognized the general rule that overpayment by married couples should be apportioned to each spouse to the extent each contributed to the overpayment.  *Id*. at 88,091.  The court apportioned half of an overpayment credit to each spouse only because it could not determine the portion of the overpayment credit attributable to each spouse despite a thorough examination of the joint return.  *Id*.  The court then relied on Washington's presumption that income earned during marriage is community property, as are funds inextricably commingled with community property.  *Id.* at 88,092.

*Id*. at 1038-39.

This Court agrees with the court in *Barrow* that an allocation of income tax refunds

cannot be done simply by looking exclusively at a debtor and a non-debtor spouse's income or withholdings.  However, the Ninth Circuit in *Elam* instructed that tax refunds should generally be allocated according to a debtor and non-debtor spouses' contribution to the overpayment.

While the Ninth Circuit has not explained how to allocate each of a joint tax payer's contributions to overpayments, within the past year, the Tenth Circuit Court Bankruptcy Appellate Panel "navigate[d] the treacherous intersection of the laws of property, taxation, and bankruptcy with only algebra and IRS rulings to guide [it]."  *In re Crowson*, 431 B.R. at 487. Recognizing, as the bankruptcy court did in *Barrow*, that tax refunds do not stem exclusively from income or withholdings, the court in *Crowson* relied on the formula used by the Internal Revenue Service when it divides joint tax refunds between spouses.[1]  The Internal Revenue Service formula approach adopted by the court in *Crowson* is a blended approach that considers both income and withholdings by calculating a spouse's individual refund by subtracting the spouse's individual liability, determined in accordance with the married filing separate formula,

---

[1]  The *Crowson* Court recognized that "courts are not bound either by the [Internal Revenue Service's manual] or by revenue rulings of the IRS[.]" However, the court in *Crowson* found the Internal Revenue Manual and several revenue rulings helpful and indeed, on January 11, 2011, the United States Supreme Court in *Ransom v. FIA Card Services*, N.A., ___ U.S. ___, 131 S.Ct. 716 (2011), specifically determined that it was appropriate to look at the Internal Revenue Manual for guidance:

> Although the statute does not incorporate the IRS's guidelines, courts may consult this material in interpreting the National and Local Standards; after all, the IRS uses those tables for a similar purpose-to determine how much money a delinquent taxpayer can afford to pay the Government. The guidelines of course cannot control if they are at odds with the statutory language. But here, the Collection Financial Standards' treatment of the car-ownership deduction reinforces our conclusion that, under the statute, a debtor seeking to claim this deduction must make some loan or lease payments.

131 S.Ct. at 726.

from the spouse's contribution toward the joint liability:

> In Revenue Ruling 74-611, the IRS ruled that when a husband and wife file a joint return, each spouse has a separate interest in the jointly reported income and a separate interest in any overpayment.  Revenue Ruling 80-7 applies those principles in the context of determining what portion of a married couple's current-year joint income tax refund the IRS may retain and offset against one spouse's prior-year individual tax liability.  In creating a formula for determining each spouse's rights in a joint refund for the purposes of offset, the IRS borrowed its previously established method of determining a decedent's separate tax liability (or refund) generated by a joint return with the surviving spouse.  This Court is therefore of the opinion that allocating tax liability and credits between a decedent's estate and the surviving spouse, or between spouses for the purpose of offsetting only one spouse's refund against a prior liability, is analogous to allocating the tax liabilities and refunds between a bankruptcy estate and a non-filing spouse.

*Crowson*, 431 B.R. at 491.  The *Crowson* approach is well-reasoned and does not suffer from the criticisms that have been lodged against the three previously followed approaches.

Following *Crowson*'s guidance, the Court first seeks to calculate the total contributions made by each spouse.  The sum of each spouse's contributions should equal line 71 on the payments section of Debtor's 2009 Form 1040.  *See* Exhibit B.  The total contributions in this case were $88,014.00, and consisted of two components; federal income tax withholding in the amount of $46,307 and 2009 estimated tax payments and amounts applied from the 2008 return of $41,707. The Court would note that Debtor is listed as the "taxpayer" on the 2009 federal income tax return and is sometimes identified on the return with the letter "T."  Debtor's spouse is listed as the spouse and is sometimes identified on the 2009 tax return with the letter "S".  Statements 7 and 8 to Debtor's 2009 federal income tax return show that $42,913 of the total withholding figure of $46,307 is attributable to "T," or Debtor, while the remainder of $3,394 is attributable to "S," or the non-debtor spouse.

As for the estimated tax payments made by Debtor and his spouse, Revenue Ruling 80-7, 1980-1 C.B. 296, instructs that "in the event the spouses cannot agree on the allocation of the estimated tax payments, the estimated tax payments will be allocated according to the following formula:

> Separate tax liability            x    Estimated tax payments
> Both separate tax liabilities

In Rev. Rul. 76-140, 1976-1 C.B. 376, the Service stated that section 1.6015(b)-1(b) would also apply if a husband and wife filed a joint income tax return and elected under section 301.6402-3(b)(2) of the Administrative and Procedural Regulations to have their overpayment credited to their estimated tax liability for the subsequent year but failed to file a declaration of estimated tax for the subsequent year and filed separate returns in the subsequent year. Therefore, if neither spouse reports any income subject to withholding and the spouses file a joint declaration of estimated income tax and/or make a payment with their joint return, then in the absence of clear and convincing evidence to the contrary, each spouse's contribution will be determined in accordance with the formula in section 1.6015(b)-1(b) of the Income Tax Regulations.

If the spouses have income subject to withholding and they file a joint declaration of estimated tax and/or make a payment with their joint return then each spouse's contribution should be determined by combining the two contribution methods. Each spouse's contribution will include the withholding tax credits reported by the spouse on the joint return. In addition, in the absence of clear and convincing evidence to the contrary, the formula in section 1.6015(b)-1(b) of the regulations shall be used to allocate to the spouses the estimated tax payments and/or payments with the joint return.

Once the debtor and non-debtor spouse's respective contributions to the total payments are determined, courts must then determine to what extent each spouse's contribution to payments should be applied against the joint tax liability.  To make such determination,

each spouse must calculate what tax liability he or she would have incurred on his or her separate income.  As stated above, this is done by calculating each spouse's hypothetical "married filing separately" (MFS) tax liability.  Then, one party's MFS liability is divided by the sum of both parties' MFS liabilities to create a

percentage of the joint tax liability that is allocated to that party. For instance:

$$\frac{\text{A's MFS liability}}{\text{A's MFS liab} + \text{B's MFS liab}} \quad x \quad \begin{array}{c}\text{actual joint liability} \\ \text{(from joint return)}\end{array} \quad = \quad \begin{array}{c}\text{A's share of} \\ \text{joint tax liability}\end{array}$$

That party's share of the joint tax liability is then subtracted from the sum of all of his or her contributions to the "total payments," resulting in a figure representing that party's share of the joint refund.

*Crowson,* at 495.

This Court has not previously had the opportunity to consider the appropriate method for allocating income tax refunds. Given the absence of prior guidance and rather than attempting to make the foregoing calculations on the parties' behalf, the Court deems it appropriate to leave the record open to allow Debtor and the Trustee additional time to perform the necessary calculations. In particular, the parties need to ascertain what Debtor and his non-debtor spouse's married filing separate tax liability would have been in 2009. While the Court can easily calculate Debtor and his non-debtor spouse's contribution to the overpayment from tax withholding, the Court would also direct that the parties calculate Debtor and his spouse's contributions to the estimated tax payments as shown on page 2, line 62 of their 2009 1040 U.S. Individual Income Tax Return.

To allow the parties additional time to complete the computations discussed above and consistent with this Memorandum of Decision, the Court will enter a separate order providing as follows:

IT IS ORDERED that Debtor and the Trustee shall have until March 31, 2011, to calculate Debtor and his non-debtor spouse's married filing separate tax liability for 2009 and to calculate Debtor and his spouse's contributions to the estimated tax payments as shown on page

11

2, line 62 of their 2009 1040 U.S. Individual Income Tax Return.  If the parties are unable to resolve the Trustee's pending Motion for Turnover in light of the Court's above guidance, the Court would direct that on or before March 31, 2011, Debtor and the Trustee provide the Court will the additional calculations, after which time the Court will enter an order on the Trustee's pending Motion.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

12